UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JACK CHRISTIE, D.C., *Plaintiff* § § § § § § | |
| | § CIV. ACTION NO. 4:10-cv-1766 |
| V. § § | |
| AETNA HEALTH, INC., *Defendant.* § § § § § | |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff Jack Christie, D.C.'s Motion to Remand ("Motion"). (Doc. No. 18.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court determines that the Motion must be **DENIED.**

### I. BACKGROUND

In 1997, Plaintiff Jack Christie, D.C. ("Plaintiff" or "Christie"), a Houston-based chiropractor and the owner and operator of Memorial Chiropractic Clinic, entered into a Provider Agreement with Aetna Health, Inc. ("Defendant" or "Aetna"). (Mot. Remand ¶ 7.) Under the Provider Agreement, Christie agreed to "provide to Members those Covered Services which are described in the Services Schedule attached hereto and made a part hereof ('Provider Services')." (*Id.* ¶ 8.) For more than ten years, the parties engaged in a routine course of dealing. (*Id.* ¶ 9.) During this time, Christie submitted

claims for the services he provided and Aetna remitted payment for those services. (*Id.*) In 2007, Christie claims, Aetna initiated a review of Christie's charges for services despite the fact that his claims submission practices had not changed. (*Id.* ¶ 10.) Aetna then "stopped paying for **all** Provider Services for **all** patients which it had routinely and consistently paid in the past." (*Id.* ¶ 12 (emphasis in original).) Thereafter, Aetna terminated the Provider Agreement with Christie altogether. (*Id.* ¶ 13.) At the time the Provider Agreement was terminated, Christie claims, Aetna still owed him payment for multiple services he had provided. (*Id.*) Christie brought this lawsuit in state court against Aetna, alleging breach of contract, quantum meruit, and promissory estoppel based on Aetna's alleged failure to perform in accordance with the terms of the parties' Provider Agreement. (*Id.* ¶ 1.) The case was removed to this Court on the grounds that Christie's contract claims raised federal claims "in character" because they were preempted by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"). (*Id.* ¶ 3.)

Christie then filed the present Motion, seeking to remand the case to state court. In the Motion, Christie argues that his contract claims arise out of the Provider Agreement and not the patients' insurance plans, and therefore do not present a federal question giving rise to federal jurisdiction. (*Id.* ¶¶ 19-23.) According to Christie, Aetna's own internal documents and pleadings reflect that Christie was denied payment based not upon Aetna's interpretation of individual insurance plans, but rather upon Aetna's interpretation of its own obligations to pay, and Christie's obligations to document, claims pursuant to the Provider Agreement. (*Id.* ¶ 5.) Thus, Christie concludes, "the ultimate issue to be determined by the fact-finder is not whether the services are covered under each individual patient's insurance plan, but rather whether the parties fulfilled

2

their respective obligations under the Provider Agreement and whether the proper rate has been paid by Aetna." (*Id.*)

In response, Aetna states that for at least three patients for whom Christie seeks to recover payments, J.V., T.A., and N.A. (collectively, "the Members"), Christie's claims were denied because their services were not covered under their respective ERISA plans. (Doc. No. 24, Resp. to Mot. Remand 6.) As a consequence, Aetna argues, Christie's claims for these patients could have been brought pursuant to ERISA. (*Id.* 12.) Therefore, according to Aetna, the case should not be remanded. (*Id.* 16.)

In his Reply, Christie states that this Court need only examine the face of his Complaint, which does not state a claim arising under federal law. (Doc. No. 30, Reply to Resp. to Mot. Remand 3.) Further, Christie argues, "[t]he fact that Dr. Christie was provided assignments of the right to payment from members does not invoke ERISA when the Provider's claims are based on an independent agreement." (*Id.* 4.) Indeed, Christie avers, the lawsuit began in the first place "because Aetna wanted to vary the payment terms set forth in the Provider Agreement and the payment schedules." (*Id.* 5.) Christie also raises the argument, for the first time, that Aetna sent a letter to Christie stating that it was terminating the Provider Agreement exclusively based on the fact that he had not complied with claims submission procedures. (*Id.* 6.) Therefore, according to Christie, his very termination was based on his alleged breach of the terms of the Provider Agreement, and not the terms of the patients' benefit plans. (*Id.* 6-7.) Looking at the individual patients singled out by Aetna, Christie argues that each claim was denied because of alleged lack of documentation, which was required under the Provider Agreement and not the benefit plans. (*Id.* 7-8.) Christie further observes that for patient

3

T.A., Aetna denied the claim because the service did not meet the coverage requirements outlined in Aetna's Clinical Policy Bulletin ("the Bulletin"). (*Id.* 8.) The Bulletin is not a part of the patient's medical plan, Christie complains. (*Id.*) Christie also insists that the affidavit of Aetna employee Garrett Shohan ("Shohan"), which outlines the reasons for Aetna's denials of the Member's claims, is defective. (*Id.* 7.) Specifically, Christie suggests that there is no showing that Shohan is qualified to testify or is a custodian of records for Aetna. (*Id.*)

Aetna filed a Sur-Reply in which it notes that by its terms, the Provider Agreement is not triggered unless Aetna is billed for "Covered Services," which the Agreement defines as "[t]hose Medically Necessary Services which a member is entitled to receive *under the terms and conditions of a Plan*." (Doc. No. 35, Sur-Reply to Reply to Response to Mot. Remand 2.) To qualify as adequate, Aetna states, Christie had to show that J.V.'s claim was covered by J.V.'s ERISA plan. (*Id.* 7.) In other words, when Aetna refers to lack of documentation, it means that Christie failed to make a showing that J.V.'s claim was covered. In terms of its denial of coverage for services allegedly rendered to T.A., Aetna points out that T.A.'s plan imposes documentation requirements. (*Id.* 8.) Furthermore, Aetna explains, the Fifth Circuit has recognized that an insurer's reliance on a clinical policy bulletin to determine what is "medically necessary" is reasonable under ERISA. (*Id.* 9 (citing *Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 643 (5th Cir. 1997) (per curiam)).) Finally, Aetna alleges that its records prove that it denied Chrstie's claim for services allegedly provided to N.A. because Christie double-billed them, which "is duplication of services which are not covered" under N.A.'s healthcare plan. (*Id.* 9.) Aetna concludes that is has proven that it

4

determined Christie's claims should not be paid because they were not covered under the Members' respective ERISA plans. (*Id.* 10.) On these grounds, Aetna contends, Christie's Motion to Remand must be denied. (*Id.*)

## II. LEGAL STANDARD

The party seeking removal bears the burden of showing that federal jurisdiction is proper. *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 365 (5th Cir. 1995). Normally, federal courts look to the face of a complaint to determine whether it implicates a substantial, disputed question of federal law. *Id.* at 366; *Memorial Hermann Hosp. System v. Aetna Health Inc.*, No. H-11-267, 2011 WL 3703770, at *2 (S.D. Tex. Aug. 23, 2011). However, in the context of ERISA preemption, "even if the plaintiff did not plead a federal cause of action on the fact of the complaint, the claim is necessarily federal in character if it implicates ERISA's civil enforcement scheme." *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009) (quotations omitted). ERISA § 502(a)(1)(B) provides:

> "A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). If a party's state law claims fall within that provision, they are preempted by ERISA. *Lone Star*, 579 F.3d at 528. "Complete preemption permits removal to federal court because the cause of action arises under federal law." *Young v. Prudential Ins. Co. of Am.*, No. H-07-612, 2007 WL 1234929, at *3 (S.D. Tex. April 24, 2007). If a claim is preempted, the federal court exercises supplemental jurisdiction as to the plaintiff's remaining, non-preempted claims. *Day v. Lockheed Martin Corp.*, 428

5

Fed.Appx. 275, 278 (5th Cir. 2011). Thus even one preempted claim is sufficient to bar remand. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999); *Cotner v. Hartford Life & Annuity Ins. Co.*, No. 3:07-CV-0487-G, 2008 WL 59174, at *3 (N.D. Tex. Jan. 4, 2008).

In *Aetna Health Inc. v. Davila*, the Supreme Court created a two-part test for determining whether a claim is preempted by ERISA. The Supreme Court stated that "if an individual, at some point, could have brought his claim under ERISA § 504(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. 299, 210 (2004). "Courts applying *Davila* have found that there is no ERISA preemption when a health-care provider sues an insurance company to assert contract claims that exist independently of ERISA." *Northeast Hosp. Authority v. Aetna Health Inc.*, No. H-07-2511, 2007 WL 3036835, at *8 (S.D. Tex. Oct. 17, 2007). "In contrast, courts applying *Davila* have found that when an ERISA plan participant has sued to assert his plan rights, ERISA preemption applies." *Id.* at *9.

As the Fifth Circuit recently explained, "[a] claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA." *Lone Star*, 579 F.3d at 530 (emphasis in original). Thus, even if an insurance plan and a Provider Agreement cross-reference one another, there is no preemption if "the terms of the plan—in particular, those related to coverage—are not in issue." *Id.* Conversely, "any determination of benefits under the terms of the plan—i.e, what is 'medically necessary' or a 'Covered Service'—does fall within ERISA." *Id.* at 531. In other words, "claims

6

stray from the boundaries of their Provider Agreements into ERISA territory" if they "assert[] improper denials of medically necessary claims and violations of ERISA procedural requirements." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009). *See also Memorial Hermann Hosp. System*, 2011 WL 3703770, at *3 ("When the question is the right of payment, as opposed to the rate of payment, ERISA complete preemption is triggered and Memorial Hermann's motion for remand must fail."); *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 325 (2d Cir. 2011) ("[W]here a provider's claim involves the *right to payment* and not simply the *amount or execution of payment*—that is, where the claim implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan, and not simply the contractually correct payment amount or the proper execution of the money transfer—that claim constitutes a colorable claim for benefits pursuant to ERISA § 502(a)(1)(B).").

## III. ANALYSIS

As a preliminary matter, the Court observes that Christie misstates the standard under which his Complaint must be scrutinized. Although courts normally look to the face of a complaint to determine whether it implicates federal law, ERISA provides an exception. *Memorial Hermann Hosp. System*, 2011 WL 3703770, at *2; *Lone Star*, 579 F.3d at 528. If a complaint implicates ERISA's civil enforcement scheme, it is federal in character. *Id.* This is true even if a claim is pleaded entirely in state law terms. *Davila*, 542 U.S. at 208. Although Christie's Complaint alleges violations of state law only, the Court must scratch beneath the surface to discover whether any of those claims for relief

"duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Davila*, 542 U.S. at 209.

The Court will first address Christie's argument that it should disregard Shohan's affidavit altogether. Federal Rule of Civil Procedure 56(c)(4) states that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In his affidavit, Shohan explains that his statements are based on his personal knowledge and Aetna's business records. (Ex. 5 to Reply to Mot. Remand, Shohan Aff. ¶ 2.) As a representative for Aetna, Shohan explains, he has access to and is familiar with Aetna's medical claims and processing records, as well as Aetna's claims review and adjudication processes for claims with reference to managed care agreements with healthcare providers. (*Id.* ¶ 3.) Shohan's affidavit establishes that he has personal knowledge of the facts, that the facts would be admissible in evidence, and that he is competent to testify on the matters stated. Therefore, the Court need not discredit Shohan's affidavit.

The Court will next examine whether, under the *Davila* test, any of Christie's claims is preempted by ERISA. Under *Davila*, the Court must first determine whether Christie could have, at some point, brought any claims under ERISA § 504(a)(1)(B). "Third party medical providers may bring a claim under § 1132(a), if the provider is suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." *Memorial Hermann Hosp. System*, 2011 WL 3703770, at *2 (quotations omitted). *See also Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988). Christie does not contest that he would have had standing to bring claims under §

8

504(a)(1)(B). Further, Christie is a third-party medical provider and assignee of beneficiaries' rights under their ERISA plans. (Resp. 7 n.15.) Therefore, Christie meets the first prong of the *Davila* test.

Under the second prong of *Davila*, this Court must decide whether there is an "independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Aetna presents three patients for whom it allegedly denied claims due to lack of coverage under their ERISA plans. (Shohan Aff. ¶¶ 4-6.) Christie argues that there is an independent basis for each of these denials under the Provider Agreement, and therefore his claims are not preempted. Specifically, Christie contends that Aetna denied these claims in part because of inadequate documentation pursuant to the Provider Agreement.

Christie is correct that Aetna appears to have denied the claims in part because of inadequate documentation. Yet Aetna has shown that documentation was required under the terms of the plans themselves. (Sur-Reply 6-9.) For example, as to patient J.V., Aetna wrote:

> Based upon the progress notes there are no objective functional deficits that require ongoing chiropractic care and functional deficits that require ongoing chiropractic care and physical therapy for restoration. The care being rendered is not an active, therapeutic program, as there is no documentation supporting a plan of care. The plan of care should include: the date of onset or exacerbation of the disorder/diagnosis; specific statements of long-term and short-term goals; a reasonable estimate of when the goals will be reached; the specific treatment techniques and/or exercises to be used in treatment; and the frequency and duration of treatment. Therefore, this therapy is not a covered benefit under the plan. Additionally, the progress notes do not clearly document the services rendered.

9

(Resp. 9; Ex. 5-B to Resp, Oct. 3, 2008 Email from Shohan, Garrett to Olea, Miriam.) As to patient J.V., Aetna points out that Christie is responsible for proving his services are a covered benefit under J.V.'s plan. (*Id.* 6.) According to the Provider Agreement, Christie was to "submit claims to [Aetna] or the applicable Payor for non-capitated Covered Services rendered to members." (*Id.* 7; Doc. No. 30-3, Provider Agreement § 3.5.) As Aetna explains, "Covered Services," for which Christie could receive payment, are "[t]hose Medically Necessary Services which a Member is entitled to receive under the terms and conditions of a Plan." (*Id.* 7; Provider Agreement § 12.4.) Aetna declined to compensate Christie for services rendered to J.V. because Aetna was not convinced that the services were covered under J.V.'s plan.

Similarly, Aetna denied Christie's claims as to member T.A. "because the services billed were determined to be not medically necessary, not performed, and not meeting the member's plan coverage criteria because no documentation of a diagnosis of muscle paralysis was made and maintenance therapy was not covered under the terms of the member's self-funded plan established and maintained by Invesco." (Shohan Aff. ¶ 6.) Although Aetna describes lack of documentation as among its reasons for denying coverage, the documentation requirements were imposed by T.A.'s ERISA plan. (Sur-Reply 8; Doc. No. 24-12, IVESCO Benefit Plan 30-31.) Furthermore, by examining whether Christie's claim met the coverage criteria in the Bulletin, Aetna merely exercised its discretion to determine whether a service was medically necessary under T.A.'s plan. (IVESCO Benefit Plan 41, 46.) At its core, the dispute between Aetna and Christie concerned the right to payment pursuant to the terms of T.A.'s plan.

10

Aetna denied Christie's claims as to N.A. because of "lack of coverage under the terms of the member's self-funded plan established and maintained by Allstate Insurance Company because no initial evaluation with care plan and goals was made no [*sic*] measurable progress was shown." (Shohan Aff. ¶ 4.) Furthermore, the "charges submitted showed a duplication of services and maintenance therapy, which are not covered." (*Id.*) Although documentation was also at issue with N.A.'s claim, the documentation clearly related to whether the service itself was covered, rather than implicating independent documentation requirements under the Provider Agreement. In other words, the disputes in these cases concern *right* to payment rather than the *rate* of payment. As the Fifth Circuit has explained, disputes concerning the right to payment fall within ERISA. *Lone Star*, 579 F.3d at 530 (emphasis in original). Christie could have brought these claims under ERISA, and there is no independent legal duty implicated by Aetna's actions. Therefore, these claims are preempted by ERISA.

Christie further argues that his case should be remanded because Aetna terminated the Provider Agreement exclusively based on the fact that he had not complied with claims submission procedures. (Reply 6.) Even if Christie could raise this issue for the first time in his Reply, his argument is unavailing. To prevent remand, Aetna need only show that one of Christie's claims is preempted. *Giles*, 172 F.3d at 337; *Cotner*, 2008 WL 59174, at *3. Aetna has made that showing. Regardless of Aetna's reasons for terminating the Provider Agreement, this case is properly in federal court.

## IV.   CONCLUSION

Under the test set forth in *Davila*, at least one of Christie's claims is preempted by ERISA. Complete preemption permits removal to federal court. Furthermore, this Court

exercises supplemental jurisdiction as to any of Christie's remaining, non-preempted claims. For the reasons explained above, Christie's Motion to Remand is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 21st day of November, 2011.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**